Opinion filed November 7, 2024



In The

# Eleventh Court of Appeals

_____

## No. 11-23-00134-CV

_____

## WILLIAM BROWN, Appellant

## V.

## PETTY FLYING SERVICE, INC., Appellee

**On Appeal from the 50th District Court**
**Knox County, Texas**
**Trial Court Cause No. 10243**

## M E M O R A N D U M   O P I N I O N

Appellant, William Brown, seeks reversal of the trial court's judgment for damages following a jury trial on a breach-of-contract claim brought by Appellee, Petty Flying Services, Inc. In three issues, Brown challenges the judgment because: (1) the trial court's charge and verdict excluded an essential element for breach of contract; (2) the trial court's charge did not include Brown's affirmative defenses;

and (3) Petty failed to present sufficient evidence under the Lodestar method to support the jury's award of attorney's fees. We affirm.

*The Trial Court's Charge Was Not Erroneous*

In Brown's first issue, he complains that the trial court's charge excluded an essential element of Petty's breach-of-contract claim—namely, whether Petty performed under the contract. In Brown's second issue, he complains that the trial court's charge excluded his affirmative defenses, in particular Petty's lack of consideration. These issues are closely related and turn on the same analysis, so we address them together.

A. *Factual and Procedural History*

Petty filed a petition alleging that Brown hired it to perform aerial herbicide application to his pastures. According to Petty, the parties discussed and agreed upon the specific chemicals to minimize damage to nearby cotton crops while maximizing effectiveness for the time of year. Petty alleged that it performed its aerial application to Brown's 6,300 acres but Brown refused to pay the amount owed of $83,246.76. Petty's petition included actions for breach of contract and a suit on a sworn account.

Brown answered with a general and verified denial and asserted affirmative defenses. The crux of Brown's answer alleged that Petty did not provide adequate consideration to support its claim or that its consideration failed because the application "failed to kill or subdue the weeds or brush."

The matter proceeded to a jury trial. Prior to the trial, both parties filed proposed jury charges. Relevant to the issues before us, Brown filed two proposed charges, which focused on whether Petty breached the parties' contract, either completely or partially, and what damages, if any, Petty owed to Brown for said breach. During the charge conference, Brown did not object to the trial court's charge, but instead provided a third proposed jury charge. Like Brown's first two

proposed charges, the third charge focused on whether Petty breached the party's contract, partially or completely. The trial court rejected Brown's proposed jury charge.

The trial court's charge that was submitted to the jury included the following relevant questions and instructions:

**QUESTION 1**

Did Plaintiff and Defendant agree that Defendant would pay Plaintiff for the application of the herbicides referenced in the invoice applied by Plaintiff to Defendant's property?

In deciding whether the parties reached an agreement, you may consider what they said and did in light of the surrounding circumstances, including any earlier course of dealing. You may not consider the parties' unexpressed thoughts or intentions.

. . . .

**QUESTION 2**

Answer this question if the answer to Question 1 is "yes", otherwise do not answer this question.

Did Defendant fail to comply with the agreement, if any?

. . . .

**QUESTION 3**

If you answered "Yes" to question 2, answer the following question. Was the defendant's failure to comply excused?

Failure to comply by the defendant would be excused if you find that Plaintiff had previously failed to comply with a material obligation of the same agreement.

A failure to comply must be material. The circumstances to consider in determining whether a failure to comply is material include:

3

1. the extent to which the injured party will be deprived of the benefit which he reasonably expected;

2. the extent to which the injured party can be adequately compensated for the part of that benefit of which he will be deprived;

3. the extent to which the party failing to perform or to offer to perform will suffer forfeiture;

4. the likelihood that the party failing to perform or to offer to perform will cure his failure, taking into account the circumstances including any reasonable assurances;

5. the extent to which the behavior of the party failing to perform or to offer to perform comports with standards of good faith and fair dealing.

. . . .

**QUESTION 5**

If you answered "Yes" to question 3, answer the following question.

Did Plaintiff perform compensable work for Defendant for which it was not compensated?

Plaintiff performed compensable work if it rendered valuable services or furnished valuable materials to Defendant; Defendant accepted, used, and benefited from the services or materials; and, under the circumstances, Defendant was reasonably notified that Plaintiff expected to be compensated for the services or materials.

The jury answered "yes" to Questions One and Two and "No" to Question Three. Because the jury answered "No" to Question Three, it was not required to answer Question Five. The jury awarded Petty $83,246.76 in damages and $47,000 in attorney's fees. The trial court entered a judgment for Petty in accordance with the jury's verdict.

B. *Applicable Law & Standard of Review*

To prevail on a breach-of-contract claim, a party must establish the following elements: (1) the existence of a valid contract; (2) performance or tendered

4

performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages to the plaintiff as a result of the defendant's breach. *Caprock Inv. Corp. v. Montgomery*, 321 S.W.3d 91, 99 (Tex. App.—Eastland 2010, pet. denied).

An affirmative defense is "a denial of the plaintiff's right to judgment even if the plaintiff establishes every allegation in its pleadings." *Bracton Corp. v. Evans Constr. Co.*, 784 S.W.2d 708, 710 (Tex. App.—Houston [14th Dist.] 1990, no writ). An affirmative defense allows the defendant to introduce evidence to establish an independent reason why the plaintiff should not prevail; it does not rebut the factual proposition of the plaintiff's pleading. *Heggy v. Am. Trading Employee Ret. Account Plan*, 123 S.W.3d 770, 778 (Tex. App.—Houston [14th Dist.] 2003, pet. denied). A lack of consideration does not fall within the definition of affirmative defense because it does not provide an independent reason to find against the plaintiff—it goes directly to the plaintiff's cause of action. Rather, consideration is a fundamental element of every valid contract. *Roark v. Stallworth Oil & Gas, Inc.*, 813 S.W.2d 492, 496 (Tex. 1991); *Belew v. Rector*, 202 S.W.3d 849, 854 (Tex. App.—Eastland 2006, no pet.). In contrast, a failure of consideration is an affirmative defense that must be pleaded with verification. *See* TEX. R. CIV. P. 94; *Belew*, 202 S.W.3d at 854 & n.4 (explaining the distinction between a lack of consideration and a failure of consideration).

"It is fundamental to our system of justice that parties have the right to be judged by a jury properly instructed in the law." *Ford Motor Co. v. Ledesma*, 242 S.W.3d 32, 44 (Tex. 2007) (quoting *Crown Life Ins. Co. v. Casteel*, 22 S.W.3d 378, 388 (Tex. 2000)). The plaintiff bears the burden of obtaining affirmative answers to jury questions regarding necessary elements of his cause of action. *Id.* Failing to obtain an affirmative answer on a necessary element requires reversal of the judgment. *See id.* at 44–45 (reversing the judgment for a missing order but remanding for a new trial, rather than rendering judgment, in the interest of justice);

5

*see also Philadelphia Indem. Ins. Co. v. White*, 490 S.W.3d 468, 488–89 (Tex. 2016) (reversing a judgment due to a lack of affirmative finding on an essential element and noting that the broad-form question was inadequate under the circumstances).

To preserve an appellate complaint, "[a] party objecting to a charge must point out distinctly the objectionable matter and the grounds of the objection." *Ford Motor Co.*, 242 S.W.3d at 43 (quoting TEX. R. CIV. P. 274). Whether a charge error is preserved typically depends on whether the party brought its complaint to the trial court's attention, timely and plainly, and obtained a ruling. *Id.* Rule 278 of the Texas Rules of Civil Procedure states that,

> [a] judgment shall not be reversed because of the failure to submit other and various phases or different shades of the same question. Failure to submit a question shall not be deemed a ground for reversal of the judgment, unless its submission, in substantially correct wording, has been requested in writing and tendered by the party complaining of the judgment; provided however, that objection to such failure shall suffice in such respect if the question is one relied upon by the opposing party.

TEX. R. CIV. P. 278. "When the complaining party's objection, or requested question, definition, or instruction is, in the opinion of the appellate court, obscured or concealed by voluminous unfounded objections, minute differentiations or numerous unnecessary requests, such objection or request shall be untenable." *Id.* R. 274.

> On preserving charge error, the Supreme Court of Texas has stated that,
>
> [t]rial courts lack the time and the means to scour every word, phrase, and omission in a charge that is created in the heat of trial in a compressed period of time. A proposed charge, whether drafted by a party or by the court, may misalign the parties; misstate the burden of proof; leave out essential elements; or omit a defense, cause of action, or (as here) a line for attorney's fees. Our procedural rules require the lawyers to tell the court about such errors before the charge is formally submitted to a jury. TEX. R. CIV. P. 272. Failing to do so squanders judicial resources, decreases the accuracy of trial court judgments and

wastes time the judge, jurors, lawyers, and parties have devoted to the case.

*Cruz v. Andrews Restoration, Inc.*, 364 S.W.3d 817, 829–30 (Tex. 2012) (concluding party's pretrial proposed jury charge was insufficient to preserve party's appellate complaint of missing questions).

C. *Analysis*

We begin by addressing Petty's argument that Brown failed to preserve his first issue by failing to specifically object to the exclusion of a question regarding Petty's performance under the contract. When asked by the trial court if he had any objections, Brown simply stated, "I have requested submissions which I have included in the Defendant's Proposed Jury Charge, which I'll present to the Court." Brown did not expound on what purpose for which he was presenting his own charge, nor did he ask the trial court to include in the trial court's charge a jury question on whether Petty performed under the contract. Brown's proposed jury charge asked whether Petty "breached its contract . . . by failing to provide adequate consideration" and whether Petty had only "provided partial consideration." The proposed charge further included findings for damages and attorney's fees that would necessarily require being predicated on an affirmative counterclaim for breach of contract. *See, e.g.*, TEX. CIV. PRAC. & REM. CODE ANN. § 38.001(b)(8) (West Supp. 2024) (allowing for recovery of attorney's fees for a claim for breach of contract); *In re Nalle Plastics Fam. Ltd. P'ship*, 406 S.W.3d 168, 173 (Tex. 2013) ("To recover attorney's fees under this statute, a party must first prevail on the underlying claim *and* recover damages."). Brown included no such counterclaim in his petition nor was it tried by consent. Thus, Brown's proposed jury charge was obscured by his unnecessary requests for damages despite failing to plead them. *See* TEX. R. CIV. P. 278. Further demonstrating lack of preservation error, Brown did not specifically raise concerns about omitted elements, defenses, or causes of action

prior to submission of the trial court's charge to the jury. *See Cruz*, 364 S.W.3d at 829–30.

Brown argues that, although he did not plead a counterclaim, Petty nonetheless admitted that Brown had brought a counterclaim when it filed a general denial. However, Brown provides no authority that stands for the proposition that unknown and unpleaded counterclaims are somehow validated by an opposing party's general denial, and we have likewise found no such authority. Moreover, Brown's failure to specify the purpose of his proposed jury charge or to object to the now complained-of exclusion of same further obscures whether Brown distinctly brought his complaint to the trial court's attention and obtained a ruling. *See Ford Motor Co.*, 242 S.W.3d at 43.

Brown similarly waived at least part of his second issue. On appeal, Brown complains that his pleaded affirmative defenses and counterclaims were excluded from the trial court's charge. However, Brown's proposed jury charge did not include any instructions, definitions, or questions regarding a *failure* of consideration. *See id.*; *see also* TEX. R. CIV. P. 94 (identifying failure of consideration as an affirmative defense); *Belew*, 202 S.W.3d at 854 (noting that lack of consideration goes to a plaintiff's elements for breach of contract, not as an affirmative defense). Consequently, we conclude that Brown failed to preserve his complaint for appellate review.

Even assuming that error was preserved, we disagree with Brown that the trial court's charge entirely excluded the required element of Petty's performance under the contract. Question Three specifically instructed the jury that Brown would be excused from his performance under the contract if Petty failed to comply with a material obligation of the same agreement and asked the jury whether such occurred. The jury was asked, and answered in the negative, whether Brown was excused from performing under the contract due to Petty's failure to perform. Thus, the trial

8

court's charge properly instructed the jury on the law and the jury's answer necessarily rejects the affirmative defense of excused performance due to material breach. Question Three to the jury encompassed instructions addressing the very fact issues that Brown had proposed through the jury charge he offered. In a motion for new trial, Brown recognized that Question Three indeed addressed his claim for lack of consideration. He argued that "[t]he testimony and evidence conclusively proves as a matter of law that [Brown's] failure to perform under the terms of the contract was excused by [Petty's] substantial failure of performance of the terms of the contract which [Petty] agreed to perform constituting a failure of consideration." Additionally, Question Five allowed the jury to award Petty partial damages if it found that Petty had only partially performed. Accordingly, Brown's first and second issues relating to the trial court's charge are overruled.

*Brown Failed to Preserve His Challenge to Attorney's Fees*

Brown's third issue challenges the jury's award of attorney's fees for Petty. Brown challenges the award on two bases, arguing that the entire award should be reversed because his counsel was not allowed to present contradicting evidence regarding the reasonableness of the fees and, if we disagree, a portion of the award should be remanded for remittitur for failing to comply with the Lodestar requirements.

A. *Relevant Facts*

Petty presented one of its attorneys, Don Malone, as an expert witness on the issue of attorney's fees. Malone explained his role in the case from beginning to end for the jury, including some of his tasks such as discovery requests and responses and taking depositions. Petty offered, without objection, his counsel's billing records, which the trial court admitted. The records showed the total amount billed for pretrial work as $32,756.75. Malone explained that he is familiar with the fee rates in the region and believed hourly rates between $250 to $350 were reasonable.

9

Malone also testified that the descriptions for time billed reflected reasonable and necessary activities. Malone agreed with Petty's other trial counsel, Daniel Callahan, that an additional twenty-four hours for trial time at $350 per hour was reasonable for "Sunday, Monday, [and] Tuesday," totaling an additional $7,200 for Callahan. Malone testified that his own fees amounted to $7,000. Finally, Malone testified that he believed $47,000 was a "reasonable fee to ask the jury to award for necessary legal services" based on "all the work that's taken place."

Brown offered his attorney as an expert on attorney's fees; however, Petty objected, arguing that Brown, as defendant, did not have an affirmative claim for relief that would entitle him to be awarded attorney's fees. Brown specified that he wanted to put on evidence of attorney's fees "[f]or the defendant." The trial court agreed with Petty but permitted Brown to make an offer of proof to preserve his complaint for appellate review.[1] Brown's attorney testified that $250 to $350 was a reasonable hourly rate for the area and offered his own invoice as an exhibit, opining that the amount reflected on the invoice was reasonable.

The jury found reasonable and necessary attorney's fees for Petty in the amount of $47,000 and the trial court entered a judgment for Petty reflecting the same.

B. *Applicable Law & Standard of Review*

A party who succeeds on a breach-of-contract action and recovers damages may also recover attorney's fees. CIV. PRAC. & REM. § 38.001(b)(8); *In re Nalle Plastics Fam. Ltd. P'ship*, 406 S.W.3d at 173.

Except for fundamental error, to preserve a complaint for appellate review, a party must present to the trial court a timely and specific request, objection, or

---

[1]Although the trial court and parties referred to it as a "bill of exception," it was actually in the form of an offer of proof. *See* TEX. R. APP. P. 33.2 (noting that a party must "file" a bill of exception); *see also* TEX. R. EVID. 103(a)(2) (directing parties to "inform[] the court" of the substance of offered evidence "by an offer of proof.").

motion. TEX. R. APP. P. 33.1(a); *Wal–Mart Stores, Inc. v. McKenzie*, 997 S.W.2d 278, 280 (Tex. 1999) (per curiam). In particular, to preserve a legal-sufficiency challenge from a jury trial, a party must have specifically raised its complaint in: (1) a motion for instructed verdict; (2) an objection to the submission of a jury question; (3) a motion for judgment notwithstanding the verdict; (4) a motion to disregard the jury's answer to a vital fact question; or (5) a motion for new trial. *Cecil v. Smith*, 804 S.W.2d 509, 510–11 (Tex. 1991); *U.S.A. Precision Machining Co. v. Marshall*, 95 S.W.3d 407, 411 (Tex. App.—Houston [1st Dist.] 2002, pet. denied). In a civil case, a motion for new trial is required to complain of factual insufficiency of the evidence to support a jury finding. TEX. R. CIV. P. 324(b)(2). We find no statute singling out attorney's fees for any special treatment, so here we conclude that jury findings on attorney's fees should be given the same effect as jury findings on attorney's fees in any other civil case. *See Interest of D.A.C.-R.*, No. 05-21-00033-CV, 2022 WL 2302172, at *7 (Tex. App.—Dallas June 27, 2022) (mem. op.), *judgment set aside, opinion not vacated*, No. 05-21-00033-CV, 2022 WL 2737752 (Tex. App.—Dallas July 14, 2022, pet. denied) (supplemental mem. op.). Brown did not preserve his factual insufficiency challenges by asserting them in a motion for new trial. *See* TEX. R. CIV. P. 324(b). And he did not preserve a legal insufficiency challenge in his new trial filings or otherwise. *See Pearcy v. Brewer*, No. 05-16-00194-CV, 2016 WL 7473907, at *2 (Tex. App.—Dallas Dec. 29, 2016, pet. denied) (mem. op.) (listing ways to preserve legal sufficiency challenges). For an offer of proof to properly preserve error for appellate review, it

> must show the nature of the evidence specifically enough so that the reviewing court can determine its admissibility. The offer of proof may be made by counsel, who should reasonably and specifically summarize the evidence offered and state its relevance unless already apparent. If counsel makes such an offer, he must describe the actual content of the testimony and not merely comment on the reasons for it.

11

*PNS Stores, Inc. v. Munguia*, 484 S.W.3d 503, 511 (Tex. App.—Houston [14th Dist.] 2016, no pet.) (internal citations omitted).

C. *Analysis*

Brown does not clearly articulate his argument as one attacking the factual or legal sufficiency of the evidence supporting the jury's finding of reasonable and necessary attorney's fees. For example, Brown does not present the standard of review for challenging factual or legal sufficiency but nonetheless complains that the evidence presented falls short of established precedent for proving attorney's fees. *See, e.g.*, *Arthur Andersen & Co. v. Perry Equip. Corp.*, 945 S.W.2d 812, 818 (Tex. 1997) (setting out factors to be considered when determining whether rates and hours are reasonable). However, Brown failed to preserve *any* sufficiency complaint for appellate review. *See* TEX. R. CIV. P. 324(b)(2); *Cecil*, 804 S.W.2d at 510–11. Although Brown filed a motion for new trial, he did not challenge the jury's award of attorney's fees. *See* TEX. R. CIV. P. 324(b)(2); *Cecil*, 804 S.W.2d at 510–11. Nor did Brown utilize any other method to preserve his complaint. *See* TEX. R. CIV. P. 324(b)(2); *Cecil*, 804 S.W.2d at 510–11.

To the extent Brown argues that the trial court's exclusion of his own attorney's fee testimony requires reversal of the entire fee award, we disagree. Importantly, during Brown's offer of proof, the only evidence offered was his own counsel's invoice and opinion that the amount incurred *in defense of Brown*, as reflected, was reasonable. At no time during his offer did Brown present evidence or argument that he intended to contradict the reasonableness of the rates and time *billed by Petty's counsel. See Munguia*, 484 S.W.3d at 511. Accordingly, Brown's offer of proof was inadequate to preserve his argument for appeal. *See id.* Moreover, Brown provides no authority for the proposition that the trial court's exclusion of his own attorney's fee evidence would require this court to reverse Petty's entire award of attorney's fees, and we find none. Brown's third issue is overruled.

*This Court's Ruling*

We affirm the judgment of the trial court.

W. BRUCE WILLIAMS

JUSTICE

November 7, 2024

Panel consists of: Bailey, C.J.,
Trotter, J., and Williams, J.